**IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>**Plaintiff**<br><br>v.<br><br>ANGELA AYALA-MARTINEZ<br><br>**Defendant** | **CRIM NO.** 97-0082-1 (RAM) |

**OPINION AND ORDER[1]**

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is Defendant Angela Ayala-Martinez's ("Defendant" or "Ayala-Martinez") *pro se Motion for Reduction of Sentence and/or Compassionate Release Pursuant to 18 USC § 3582(c)(1)(B)* ("*Motion for Reduction of Sentence*"). (Docket No. 3637). Retained counsel then filed *Defendant's Emergency Motion for Compassionate Release* ("*Emergency Motion*"). (Docket No. 3660). For reasons set further below, these requests for compassionate release are **DENIED WITHOUT PREJUDICE.**

**I.   PROCEDURAL BACKGROUND**

On April 23, 1997, Ms. Ayala-Martinez was indicted on four counts in a six-count indictment. (Docket No. 444). After a jury trial, she was found guilty of counts one and two of the indictment, *i.e.*, conspiracy to possess with intent to distribute multiple kilograms of cocaine, heroin, and marijuana,

---

[1] Sayaka Ri, a rising second-year law student, assisted in the preparation of this Opinion and Order.

Criminal No. 97-0082(RAM)                                                          2

in violation of 21 U.S.C. § 841(a)(1) ("Count 1"), and conspiracy

to conduct financial transactions from proceeds of unlawful

activity, in violation of 18 U.S.C §§ 1956 and 1957 ("Count 2").

(Docket No. 444 at 5-23). On August 13, 1999, after a jury trial,

she was sentenced to life in prison as to Count 1 and twenty

years as to Count 2, to be served concurrently. (Docket Nos.

1756 and 2385). Due to her life sentence, she has no projected

release date. (Docket No. 3660 at 1). Ms. Ayala-Martinez and two

co-defendants in her original case appealed. (Docket No. 2398);

United States v. Martinez-Medina, 279 F.3d 105, 121 (1st Cir.

2002). The First Circuit ultimately affirmed their judgments and

sentences. (Docket No. 3054); Martinez-Medina, 279 F.3d at 127.

On September 29, 2020, Defendant filed a *Motion for
Sentence Reduction*. (Docket No. 3637). On January 5, 2021, her

retained counsel filed an *Emergency Motion* based on health

concerns pursuant to 18 U.S.C. § 3582(c)(1). (Docket No. 3660).

Therein, Defendant avers she suffers from a several chronic

conditions, including diabetes, hypertension, asthma, and

obesity, which are all COVID-19 risk factors. Id. at 2 and 7.

She also states that she tested positive for COVID-19 on October

2020 at FCI Waseca and was purportedly hospitalized for a month

and twelve days. Id. at 8. She recovered and returned to FCI

Waseca but is allegedly suffering from long COVID symptoms,

placing her at a heightened risk of severe illness or death if

she were to contract COVID-19 a second time. Id. at 9-10.

Defendant argues a sentence reduction is warranted because of

her health complications, her behaviour and educational training while incarcerated, as well as because she is not a threat to her community. Id. at 5; 12-14.

On February 9, 2021, the Government opposed the *Emergency Motion*, claiming that Defendant has not met her burden of establishing extraordinary reasons warranting a sentence reduction. (Docket No. 3670 at 2). Although the Government concedes she contracted COVID-19, it states that she has since recovered, is being monitored by her physicians, and her condition remains stable. Id. at 13-14. Thus, it avers her health conditions do not justify release. Id. In addition, the Government argues Defendant's conviction record indicates she still poses a risk to the community and that § 3553(a) factors weigh against a sentence reduction. Id. at 15-16. Lastly, it emphasizes that her role as the leader of a large-scale drug conspiracy makes her ineligible for release. Id. at 15.

A series of replies and sur-replies followed, reiterating the parties' arguments. (Docket Nos. 3682; 3686 and 3699).

## II.  ANALYSIS

A court cannot modify an imprisonment term once imposed, but it may grant compassionate release subject to certain requirements. *See* 18 U.S.C. § 3582(a). Per 18 U.S.C. § 3582(c)(1)(A), a court may not modify a final sentence unless a defendant has fully exhausted administrative rights to appeal a failure of the Federal Bureau of Prisons ("BOP") to bring a motion for reduction of sentence on their behalf or if thirty

(30) days have elapsed from the receipt of such a request by the warden of their facility, whichever is earlier. Id. Even so, there must still be compelling reasons meriting a reduction. Id.

The policy statement to § 1B1.13 of the United States Sentencing Commission's advisory *Guidelines Manual* provides the Court with non-binding criteria including medical reasons, age, or family circumstances to find whether extraordinary circumstances are present. *See* U.S.S.G. § 1B1.13, comment n.1. Id. Since the statement predates the First Step Act's revisions, they only provide helpful guidance and a court's adherence to these criteria is discretionary. *See* United States v. Ruvalcaba, 26 F.4th 14, 23 (1st Cir. 2022). However, this discretion is not limitless as it remains bound by statutory standards obligating the court to find "extraordinary and compelling" reasons. United States v. Bueno-Beltran, 2022 WL 1442008 at *2 (D.P.R. 2022) (citing Ruvalcaba, 26 F. 4th at 23).

In addition to considering whether these circumstances are present, a court must consider whether the defendant is a danger to the safety of another person or the community. *See* 18 § U.S.C. 3142(g). Section 3142(g) sets out four factors that a court must consider before releasing a person: (1) the nature and circumstances of the offense, specifically whether the crime is a crime of violence or involves a controlled substance; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that

would be posed by the person's release. Id. Finally, the Court must find whether a reduction is called for after balancing the 18 § U.S.C. 3553(a) factors. *See* U.S.S.G. § 1B1.13, comment n.1.

**A. Defendant has not exhausted her administrative remedies**

Pursuant to 18 U.S.C. § 3582(c)(1)(A), Defendant has not fully exhausted her administrative remedies. At an unknown time, Defendant submitted a request for an administrative remedy. (Docket No. 3660 at 6). On July 9, 2020, the Warden at FCI Waseca denied her request. (Docket No. 3637-1 at 8). Defendant appealed but her request was denied on July 28, 2020. Id. at 9-11. While thirty (30) days have passed since she appealed and was denied again, she still failed to exhaust administrative remedies by not appealing to the Regional Director and the BOP's Office of General Counsel. *See* United States v. Nieves, 2022 WL 2712528, at *2-3 (D.P.R. 2022) (summarizing the administrative remedy procedure and noting that defendants must complete the appeals process laid out in 28 C.F.R. § 542 if the warden of their facility responds to their request within thirty (30) days of receipt, such as here, before filing in federal court). Further even assuming she had exhausted all administrative remedies, her requests for release would still fail on the merits.

**B. Defendant's medical conditions may present an extraordinary and compelling reasons warranting compassionate release**

Defendant's request for compassionate release is mostly based on health concerns. (Docket No. 3660 at 3). Section 1B1.13 of the United States Sentencing Guidelines lists several medical

conditions which qualify as extraordinary and compelling reasons

for a sentence reduction. *See* U.S.S.G. § 1B1.13, comment n.1.

These include those that substantially diminish the defendant's

ability to provide self-care within a correctional facility, and

from which they are not expected to recover. Id. Courts in the

First Circuit regularly assess whether a defendant has

conditions placing them at an increased risk of severe illness

from COVID-19. *See, e.g.*, Ruvalcaba, 26 F.4th 14 at 18; United

States v. Santos, 2021 WL 92876, at *2 (D. Me 2021). Here, Ms.

Ayala-Martinez has been diagnosed with several conditions listed

by the Centers for Disease Control and Prevention ("CDC") which

may increase the likelihood of getting severely sick from COVID-

19. (Docket No. 3660).[2] These include obesity, asthma, diabetes,

and hypertension. Id. The Court will address each in turn.

    1. Obesity

    The CDC defines obesity as a BMI between 30 and < 40 kg/m$^2$

and severe obesity a BMI of 40 kg/m$^2$.[3] In terms of risk of severe

illness from COVID-19, the CDC does not differentiate between

obesity and severe obesity. Even so, courts have denied

compassionate release motions based on obesity when it is not

shown that the defendant's conditions diminish their ability to

---

[2] People with Certain Medical Conditions, Centers for Disease Control and
Prevention,           https://www.cdc.gov/coronavirus/2019-ncov/need-extra-
precautions/people-with-medical conditions.html#:~:text=Like%20adults%2C%20
children%20with%20obesity,on%20vaccination%20information%20for%20children
(last visited September 26, 2022).

[3] Defining Adult Overweight & Obesity, Centers for Disease Control and
Prevention, https://www.cdc.gov/obesity/basics/adult-defining.html#:~:text=
If%20your%20BMI%20is%2025.0,falls%20within%20the%20obesity%20range  (last
visited September 26, 2022).

care for themselves. *See, e.g.,* United States v. Reynoso, 525 F.Supp.3d 253, 255-56 (D. Mass. 2021) (holding that obesity was not an extraordinary circumstance since petitioner had not shown it diminished his ability to care for himself). Moreover, even when obesity is coupled with other conditions, courts still deny motions for compassionate release. Id. (collecting cases); *see also*, United States v. Rivera-Valle, 2021 WL 102646, at *1 (D. Mass. 2021) (denying compassionate release because "obesity and hypertension[ ] are neither uncommonly grave nor life-threatening" and given that defendant had already been infected with COVID-19, his chances for reinfection were greatly reduced).

Here, Ms. Ayala-Martinez has not shown her obesity prevents her from caring for herself. On October 21, 2020, her BMI was measured to be 32%, which is at the lower end of the obesity spectrum. (Docket No. 3686-1 at 379). Further, her medical records show her obesity is being treated and issues with morbid obesity appear resolved. Id. at 99, 268, 275, 380. Thus, her obesity does not warrant compassionate release. *See e.g.,* United States v. Miranda, 2021 WL 4592528, at *5 (D.P.R. 2021) (finding that while a BMI of 33.1 could be extraordinary reason for release, other grounds counseled against compassionate release).

2. Asthma

Ms. Ayala-Martinez has also been diagnosed with asthma, but she fails to specify its severity. (Docket No. 3686-1 at 5-6, 16, 50-51, 63, 65). For example, moderate asthma occurs "where the individual suffers from daily symptoms, experiences night-

time awakenings more than once a week, uses an Albuterol rescue inhaler on a daily basis, and experiences some limitation of normal activities." United States v. Garcia, 538 F.Supp.3d 226, 229 (D. Mass. 2021). Unsurprisingly, courts distinguish between petitioners with mild or moderate asthma and severe asthma when deciding if it is a compelling circumstance. *See* United States v. Person, 510 F.Supp.3d 1, 2-3 (D. Mass. 2021) (denying a release request because asthma was only mild); *see also* United States v. Bozochovic, 2021 WL 76153 at *3 (M.D. Pa. 2021).

While Ms. Ayala-Martinez's medical records indicate she uses an Albuterol rescue inhaler, they also show her inhaler is not for daily use and should only be used "as needed to prevent/relive asthma attack[s]." (Docket Nos. 3660 at 7; 3686-1 at 5-6, 50, 97, 113; 3670-1 at 16, 31). This counsels against compassionate release. *See* Person, 510 F. Supp. 3d at 2 (denying a career offender's compassionate release motion and noting his "medical records show that his inhaler is not for daily use").

The Court notes Defendant is also prescribed a steroidal inhaler (Mometasone Furoate) and which she should use daily. (Docket No. 3868-1 at 7, 51, 66, 273). This could indicate that she has moderate asthma, placing her at an increased risk of severe illness if she gets reinfected with COVID-19. Even so, her medical records show that she is receiving treatment for asthma while incarcerated and that issues including her asthma "are stable" and that "she is functioning independently."

(Docket Nos. 3670-1 at 16-17, 29, 38; 3686-1 at 3, 47, 72, 404-405).

### 3. Diabetes and Hypertension

Defendant also has diabetes and hypertension. (Docket No. 3660 at 7). However, BOP health services have continued to monitor these conditions after her COVID-19 hospitalization. As to her diabetes, a post-COVID medical report notes that Defendant continues to receive insulin twice a day and that she reported feeling "like [her] old self." (Docket No. 3670-1 at 13). Moreover, these records also show she is receiving medications for hypertension, too. (Docket No. 3670-1 at 13, 16-17, 31-32, 82). Thus, the BOP's reports show conditions are being taken care of, making her ineligible for compassionate release. *See* United States v. Pacheco-Montemoino, 2022 WL 897124, at *3 (D.P.R. 2022) (denying compassionate release because defendant was receiving care and his diabetes and hypertension medicines were consistently renewed).

### 4. Long-COVID Symptoms

Ms. Ayala-Martinez's *Emergency Motion* draws significant attention to her "Long COVID" symptoms as extraordinary and compelling reasons for release. (Docket No. 3660 at 9, 11). "Long COVID" has been defined as a condition that causes people to experience "symptoms that can last months after being infected [with COVID-19], or … new or recurring symptoms at a later time." Miranda, 2021 WL 4592528 at *6 (citation omitted). For example, Defendant claims due to her COVID-19 infection she

suffers from intense pain in her legs, persistent cough and difficulty breathing. (Docket No. 3660 at 9). The Government does not contest these symptoms are consistent with reported Long COVID symptoms. While courts have found compelling reasons to grant compassionate release to prisoners experiencing Long COVID, others have denied motions despite these symptoms. *See* Miranda, 2021 WL 4592528, at *6-7 (collecting cases); United States v. Fusco, 2021 WL 2000393, at *3 (S.D.N.Y. 2021).

Relatedly, Ms. Ayala-Martinez has been fully vaccinated against COVID-19, receiving her first Moderna vaccine on January 22, 2021, and the second one on February 25, 2021. (Docket No. 3713 at 1). Courts tend to deny motions for compassionate release when a defendant has received the COVID-19 vaccine as it reduces the risk of infection and severe illness from COVID-19. *See* Bueno-Beltran, 2022 WL 1442008 at *3 (collecting cases). Further FCI Waseca has zero (0) positive inmates and staff.[4] This low incidence rate and Defendant's vaccination status, even with her "long COVID" symptoms, **do not** support her motion for release.

Here, there are factors for and against finding extraordinary reasons for release based on Defendant's medical conditions. On one hand, she has been vaccinated against COVID-19 and incidence rates at FCI Waseca remain low. She is frequently monitored, given medication to address her chronic

---

[4]     *See Covid-19 Coronavirus*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/index.jsp (last visited on September 26, 2022).

conditions and symptoms and her overall condition is "stable." Conversely, she has conditions putting her at an increased risk of becoming severely ill from COVID-19, namely asthma and Long COVID symptoms. Taking these factors into account, it could be possible to conclude that Ms. Ayala-Martinez has shown an extraordinary reason for compassionate release. Nonetheless, for reasons discussed below, her motion must be denied.

### C. Defendant has not shown she is not a danger to the community

The Court must next consider whether, if released, Defendant will pose a danger to the safety of her community. *See* U.S.S.G. § 1B1.13(2); 18 U.S.C. § 3142(g). Here, Defendant has failed to show she is not a danger to others. This finding is grounded on the severity and type of her offense of conviction. In accordance with 18 § U.S.C. 3142(g), whether the defendant engaged in violent acts or was involved with a controlled substance should be considered when deciding whether a defendant warrants release. *See* 18 § U.S.C. 3142(g). Both factors are present here and counsel against compassionate release.

Ms. Ayala-Martinez was **the leader** of a drug conspiracy involving the trafficking of cocaine, heroin, and marijuana. (Docket No. 444 at 7). Courts routinely reject compassionate release motions of defendants who were leaders in drug trafficking cases. *See* United States v. French, 2021 WL 1819697, at *15 (D. Me 2021) (denying motion where the defendant was the mastermind of an extensive and sophisticated marijuana

manufacturing and distribution operation); United States v.
Newton, 2021 WL 966862, at *9 (D. Me. 2021) (denying request
because the defendant was the "chief architect" of an enormous
drug conspiracy); Miranda, 2021 WL 4592528, at *8 (denying
motion because the defendant was a danger to the community as
he played a "key role" in a drug conspiracy). Thus, rejecting
Defendant's *Emergency Motion* due to her significant role in a
drug-trafficking conspiracy is consistent with case precedent.

In addition, Ms. Ayala-Martinez's drug trafficking
operation was large scale. It involved more than 150 kilograms
of cocaine and three types of controlled substances. See
Martinez-Medina, 279 F.3d at 121. Moreover, she ordered the
execution of violent acts resulting in two deaths. Id. **The
severity of her crimes cannot be overlooked.**

Although she completed vocational and educational programs
while incarcerated, rehabilitation alone is insufficient to
warrant release with a criminal record of such severity. *See*
United States v. Sepulveda, 2022 WL 1538275, at *3 (1st Cir.
2022). The magnitude of Defendant's drug trafficking operation,
coupled with her role in the conspiracy and the violent acts
under her leadership, render her ineligible for compassionate
release as she remains a danger to the community. Lastly, a
sentence reduction would not reflect the seriousness of her
offenses, promote respect for the law, or provide the adequate
deterrence to criminal conduct required by 18 U.S.C. § 3553.

## III. CONCLUSION

Defendant Angela Ayala-Martinez's *Motion for Reduction of Sentence and/or Compassionate Release Pursuant to 18 USC § 3582(c)(1)(B)* (Docket No. 3637) and *Defendant's Emergency Motion for Compassionate Release* (Docket No. 3660) are hereby **DENIED WITHOUT PREJUDICE.**

In San Juan, Puerto Rico, this 28th day of September 2022.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge